# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Highland Surgical Center LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | |
| | § | Case No. 4:21-cv-02409 |
| Wells Fargo & Company, | § | |
| | § | |
| *Defendant*. | § | |

## **Plaintiff's First Amended Complaint**

Plaintiff Highland Surgical Center LLC (the "Surgery Center") brings this First Amended Complaint against Defendants the Albertsons/Randall's health plan; the BB&T McGriff, Seibels & Williams health plan; the Canon USA, Inc. health plan; the CDK Global, LLC health plan; the Central Garden & Pet Company health plan; the Cheniere Energy, Inc. health plan; the Discover Financial Services, Inc. health plan; the Marathon Petroleum Corporation health plan; the NRG Energy, Inc. health plan; the Sysco Corporation health plan; the TeamCare health plan; and the Wells Fargo & Company health plan (collectively, the "Health Plans"), and for cause of action respectfully would show as follows:

1

# I.

## __Introduction__

The Surgery Center is an ambulatory surgery center specializing in otolaryngological surgical procedures. Patients who are participants in or beneficiaries of the Health Plans underwent surgical procedures at the Surgery Center in 2017 and 2018.

All of the Health Plans are self-funded, employer-sponsored health benefit plans governed by the federal ERISA statute. The Surgery Center is "out-of-network" with the Plans and their third-party administrators.

The terms of each of the Health Plans provide for out-of-network reimbursement at the usual, customary, and reasonable ("UCR") rate, except that the CDK Global, LLC health plan provides for out-of-network reimbursement at a rate of 200% of the Medicare fee schedule. Despite these reimbursement terms, the Health Plans paid only a small fraction of the Surgery Center's billed charges and, in some cases (including both of the CDK Global claims and one of the BB&T McGriff, Seibels & Williams claims), nothing at all. Overall, the reimbursement rates paid by the Health Plans ranged from 0% to only 13.93% of billed charges—and averaged only 3.34%. Below is a summary of the claims at issue:

| | DOS | Billed Charge | Paid by Insurance | Balance | Total Paid Amount | % Paid Total | % Paid by Insurance |
|---|---|---|---|---|---|---|---|
| Albertsons/Randall's | 3/27/2017 | $19,109.25 | $245.32 | $18,655.58 | $453.67 | 2.37% | 1.28% |
| BB&T - Mcgriff, Seibels & Williams | 7/17/2017 | $19,409.00 | $0.00 | $18,799.23 | $609.77 | 3.14% | 0.00% |
| BB&T - McGriff, Seibels & Williams. | 8/31/2018 | $11,613.00 | $326.42 | $11,196.58 | $416.42 | 3.59% | 2.81% |
| BB&T - McGriff, Seibels & Williams. | 9/28/2018 | $11,613.00 | $326.42 | $11,196.58 | $416.42 | 3.59% | 2.81% |
| Canon | 10/18/2017 | $20,978.00 | $1,932.61 | $18,993.23 | $1,984.77 | 9.46% | 9.21% |
| CDK Global | 7/12/2017 | $36,798.00 | $0.00 | $36,659.82 | $138.18 | 0.38% | 0.00% |
| CDK Global | 4/27/2018 | $45,281.00 | $0.00 | $44,888.00 | $393.00 | 0.87% | 0.00% |
| Central Garden & Pet | 11/6/2017 | $16,751.09 | $1,372.58 | $15,278.51 | $1,472.58 | 8.79% | 8.19% |
| Cheniere Energy Inc. | 5/26/2017 | $31,705.00 | $15.00 | $31,407.72 | $297.28 | 0.94% | 0.05% |
| Discover | 6/8/2018 | $64,433.00 | $264.17 | $63,668.83 | $764.17 | 1.19% | 0.41% |
| Marathon Petroleum | 3/3/2017 | $36,798.30 | $1,309.56 | $35,350.76 | $1,447.54 | 3.93% | 3.56% |
| Marathon Petroleum | 10/6/2017 | $69,615.00 | $0.00 | $69,615.00 | $0.00 | 0.00% | 0.00% |
| Marathon Petroleum | 3/20/2017 | $16,782.82 | $782.33 | $15,722.55 | $1,060.27 | 6.32% | 4.66% |
| Marathon Petroleum | 4/21/2017 | $59,670.00 | $23.02 | $59,628.77 | $41.23 | 0.07% | 0.04% |
| Marathon Petroleum | 12/15/2017 | $11,002.00 | $1,532.57 | $9,469.43 | $1,532.57 | 13.93% | 13.93% |
| NRG Energy | 2/28/2018 | $16,782.00 | $0.00 | $16,320.95 | $461.05 | 2.75% | 0.00% |
| Sysco Corp | 9/19/2017 | $35,997.09 | $0.00 | $35,253.36 | $743.73 | 2.07% | 0.00% |
| Teamcare | 7/7/2017 | $24,460.00 | $1,705.52 | $22,754.48 | $1,705.52 | 6.97% | 6.97% |
| Teamcare | 7/21/2017 | $42,931.00 | $4,105.48 | $38,782.34 | $4,148.66 | 9.66% | 9.56% |
| Teamcare | 12/1/2017 | $27,005.00 | $651.68 | $26,319.04 | $685.96 | 2.54% | 2.41% |
| Teamcare | 5/21/2018 | $30,882.00 | $2,603.06 | $28,094.54 | $2,787.46 | 9.03% | 8.43% |
| Teamcare | 7/2/2018 | $30,882.00 | $2,603.06 | $28,094.54 | $2,787.46 | 9.03% | 8.43% |
| Teamcare | 7/6/2018 | $23,226.00 | $1,867.16 | $21,315.66 | $1,910.34 | 8.23% | 8.04% |
| Teamcare | 2/17/2017 | $17,990.28 | $1,684.40 | $16,271.38 | $1,718.90 | 9.55% | 9.36% |
| Teamcare | 1/6/2017 | $55,197.45 | $2,079.39 | $53,118.06 | $2,079.39 | 3.77% | 3.77% |
| Wells Fargo Bank | 4/2/2018 | $16,782.00 | $1,063.47 | $15,349.74 | $1,432.26 | 8.53% | 6.34% |
| | | $793,693.28 | $26,493.22 | $762,204.68 | $31,488.60 | 3.97% | 3.34% |

Needless to say, such low reimbursement amounts are substantially less than the UCR amount for the services in question, and thus do not comply with the terms of the Health Plans. In fact, in most cases, the reimbursement amount was not even enough to cover the Surgery Center's costs related to the patient's care.

The Surgery Center timely appealed the Health Plans' gross underpayments to the Health Plans or their third-party administrators. Administrative and appeal options were pursued until exhausted or deemed exhausted due to futility.

Before suit was filed, the Surgery Center—as each patient's designated authorized representative—requested complete copies of the plan documents from the Health Plans' agents, as well as the methodology and data used to determine the

3

reimbursement amounts, if any.  In every case, the Health Plans completely ignored the Surgery Center's request for information or failed to provide all required information under ERISA.  Such violations of federal law entitle the Surgery Center to a civil penalty in the amount of $110 per day for each day after the 30th day upon which such requests were made. *See* 29 U.S.C. § 1132(c)(1); 29 CFR § 2575.502c-1; 29 C.F.R. §560.503-1(g).

The Surgery Center's counsel also sent a pre-suit demand letter to each Health Plan and their third-party administrator.  In most cases, the Surgery Center's demand letters were completely ignored by the Health Plans, and none of the Health Plans offered to pay what is rightfully owed.

The Surgery Center's demand letters included a spreadsheet with the following details regarding each of the claims at issue: patient name, patient date of birth, patient insurance ID number, and insurance claim number.  Thus, the Health Plans are already aware of the underlying patients' identities and the details of the claims at issue.

Given the Health Plans' refusal to pay what is rightfully owed for the surgical facility services in question and refusal to provide required plan information upon request, the Surgery Center was left with no choice but to bring this action for damages.

4

## II.

## <u>The Parties</u>

Plaintiff Highland Surgical Center LLC is a Texas limited liability company with its principal place of business in Houston, Texas.

Defendant Albertsons/Randall's health plan is a Delaware corporation with its principal place of business in Boise, Idaho. It may be served via its registered agent for service of process, CT Corporation, 1999 Bryan Street, Suite 1900, Dallas, Texas 75201.

Defendant BB&T Corporation d/b/a McGriff, Seibels & Williams, Inc. health plan is a North Carolina corporation with its principal place of business in Houston, Texas. It may be served via its registered agent for service of process, CT Corporation, 1999 Bryan Street, Suite 1900, Dallas, Texas 75201.

Defendant Canon USA, Inc. health plan is a New York corporation with its principal place of business in Huntington, New York. It may be served via its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

Defendant CDK Global, LLC health plan is a foreign limited liability company with its principal place of business in Hoffman Estates, Illinois. It may be served via its registered agent for service of process, CT Corporation, 1999 Bryan Street, Suite 1900, Dallas, Texas 75201.

Defendant Central Garden & Pet Company health plan is a Delaware corporation with its principal place of business in Walnut Creek, California. It may be served via its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

Defendant Cheniere Energy, Inc. health plan is a Delaware corporation with its principal place of business in Houston, Texas. It may be served via its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

Defendant Discover Financial Services, Inc. health plan is a Delaware corporation with its principal place of business in Riverwoods, Illinois. It may be served via its registered agent for service of process, CT Corporation, 1999 Bryan Street, Suite 1900, Dallas, Texas 75201.

Defendant Marathon Petroleum Corporation health plan is a Delaware corporation with its principal place of business in Findlay, Ohio. It may be served via its registered agent for service of process, CT Corporation, 1999 Bryan Street, Suite 1900, Dallas, Texas 75201.

Defendant NRG Energy, Inc. health plan is a Delaware corporation with its principal place of business in Houston, Texas. It may be served via its registered agent for service of process, CT Corporation, 1999 Bryan Street, Suite 1900, Dallas, Texas 75201.

6

Defendant Sysco Corporation health plan is a Delaware corporation with its principal place of business in Houston, Texas.  It may be served via its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

Defendant TeamCare is a foreign corporation with its principal place of business in Chicago, Illinois.  It can be served via its registered agent for service of process/Executive Director and General Counsel, Thomas C. Nyhan, at 8647 W. Higgins Road, Chicago, Illinois 6631.

Defendant Wells Fargo & Company Health Plan is a Delaware corporation with its principal place of business in San Francisco, California.  It has already been served through its registered agent for service of process, Corporation Service Corporation, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## III.

## Jurisdiction and Venue

This Court has federal question jurisdiction because the Surgery Center's claim arises under the federal ERISA statute, 29 U.S.C. § 1132(a)(1)(B).  ERISA Section 1132(e)(1) provides that "State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section." 29 U.S.C. § 1132(e)(1). Section 1132(f) further provides that "[t]he district courts of the United States shall

have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." *Id.* § 1132(f).

Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## IV.

### The Surgery Center's Standing

The Surgery Center has standing to sue as the assignee and designated representative of each of its patients in question. Each of the patients signed an Assignment of Benefits and Designation of Authorized Representative ("AOB") in favor of the Surgery Center, true and correct redacted copies of which are attached and incorporated by reference herein.

By executing the AOBs, the patients assigned to the Surgery Center a broad array of rights related to their healthcare benefits, and also appointed the Surgery Center as their authorized representative. These rights include not only plan benefits, such as the right to be paid directly by the Health Plans for the Surgery Center's services rendered to the patients, to obtain Health Plan documents and other information upon request, and to take all action necessary to seek payments for services based on the patients' Health Plan benefits, but also other legal rights such as any chose in action the patients may have and to pursue litigation, including

claims for penalties under ERISA.  The patients also authorized the Surgery Center to act on their behalf.

<h2 style="text-align:center">V.</h2>

### The Health Plans Waived and Are Estopped from Asserting Any Anti-Assignment Provision in the Health Plan Documents.

Throughout the entire administrative process, neither the Health Plans nor their third-party administrator ever referenced any anti-assignment language or clause in the relevant plan document, ever refused to communicate with the Surgery Center based on any such anti-assignment provision, ever refused to process the Surgery Center's claims based on any such anti-assignment provision, or ever refused to pay the Surgery Center's claims based on any such anti-assignment provision.

ERISA regulations require the Health Plans, *inter alia*, to (i) state the specific reason or reasons for the adverse benefit determination, and (ii) refer to the specific plan provisions on which the determination is based.  29 C.F.R. § 2560.503-1(g)(1). At no time during the administrative process did the Health Plans or their third-party administrator ever state that the reason for an adverse benefit determination was an anti-assignment provision, nor did they reference a specific anti-assignment provision in any Health Plan document. *See Harlick v. Blue Shield of California*, 686 F.3d 699, 719-720 (9th Cir. 2012) ("[A] court will not allow an ERISA plan

9

administrator to assert a reason for denial of benefits that it had not given during the administrative process.").

Moreover, the ERISA statute and regulations require the Health Plans to provide relevant plan documents upon request.  29 U.S.C. §1104, 1024 and 1132; 29 C.F.R. §560.503-1.  At no time during the administrative process did the Health Plans ever send any plan documents containing any anti-assignment provision to the Surgery Center, although the Surgery Center specifically requested all plan documents at least once.

On the contrary, throughout the entire administrative process, the Health Plans engaged in regular interaction with the Surgery Center before and after the claims were submitted without ever mentioning or invoking any matter regarding the assignment.  When the Surgery Center communicated with the Health Plans or their agents to verify member eligibility for out-of-network services, neither the Health Plans nor their agents ever stated that any patient was prohibited from assigning claims to the Surgery Center and never informed the Surgery Center of any such provision in any of the Health Plan documents.

While the Health Plans have not properly paid the claims at issue in this case, they and their agents have at all times treated the Surgery Center's AOBs as valid. The Health Plans have thus waived and are estopped from enforcing any anti-assignment provision within the Health Plan documents.

10

The Health Plans knew that the Surgery Center sought payment for its surgical facility services via the AOBs received from its patients because a copy of each AOB was enclosed with appeals and requests for Health Plan document letters by the Surgery Center.  The Surgery Center also specifically stated that it was acting as a beneficiary and authorized representative of its patients in its first and second level appeals.

At no time did the Health Plans invoke the anti-assignment language when they or their agents responded to the Surgery Center's multiple and repeated requests for explanations of adverse benefits decisions, appeals of the adverse benefits decisions, and requests for information about the Health Plans.  The Health Plans intentionally relinquished any right to rely on any purported anti-assignment language with full knowledge of the existence of the Surgery Center's AOBs and of the fact that the Surgery Center was relying on same. *See Herman Hospital v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 574 (5th Cir. 1992) ("It was [the Plan's] responsibility to notify [the plaintiff] of that clause if it intended to rely on it to avoid any attempted assignments."); *Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994) ("Because the Plan's actual practice is not in conformity with its strict anti-assignment provision, we conclude that  nothing in the contract precludes a finding that Lutheran and Henderson have standing as assignees."); *Glen Ridge*

11

*Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2009 WL 3233427, at \*4-5 (D.N.J. Sept. 30, 2009) (denying motion to dismiss where provider alleged course of direct dealing with plan inconsistent with anti-assignment); *Columbia Hosp. at Med. City Dall. Subsidiary, L.P. v. Legend Asset Mgmt. Corp.,* 2004 WL 769253, at \*4 n.5 (N.D. Tex. Apr. 9, 2004) (similar); *Univ of Tennessee William F. Bowld Hosp. v. Wal-Mart Stores, Inc.*, 951 F. Fupp. 724, 726 (W.D. Tenn. 1996) (denying summary judgment where Wal-Mart failed to demonstrate that it had ever asserted anti-assignment provision).

## VI.

### Exhaustion and Futility of Administrative Remedies

The Surgery Center timely appealed each of the claims at issue in this case at least twice, and thus exhausted its administrative remedies under the Health Plans. In every case, the Surgery Center either never received a response to an appeal or received a generic response from the plan's third-party administrator stating that "the claim was processed in accordance with the terms and conditions of the member's health care benefit plan," without referencing any plan terms or providing any explanation. Such non-responses or generic responses demonstrate the futility of further appeals.

Moreover, the Surgery Center is deemed to have exhausted all administrative remedies available to it because the Health Plans and their agents failed to establish

and follow reasonable claims procedures or provide a full and meaningful review and appeal process, as required by ERISA. The Health Plans and their third-party administrator have routinely failed to process claims submitted by the Surgery Center in a manner consistent or substantially in compliance with ERISA regulations and the Plan terms. *See* 29 C.F.R. § 2560.503-1. Among other things, the Health Plans and their third-party administrator:

- failed to notify the Surgery Center of benefit determinations and review determinations within the required amount of time after receipt of the claim or appeal;

- failed to provide the specific reason or reasons for their benefit determinations or review determinations;

- failed to make reference to the specific plan provisions on which their benefit determinations or review determinations were based;

- made materially false and misleading statements concerning their processing of claims, and refused to disclose the true internal rules, guidelines, protocols and criteria that were relied upon in making the benefit and review determinations;

- failed to provide the Surgery Center with a sufficient description of the Health Plans' review procedures;

- failed to provide review of appeals that did not afford deference to the initial benefit determination, and which was conducted by an appropriate named fiduciary of the plan who is independent of the person who made the initial benefit determination;

- denied the Surgery Center's efforts to become sufficiently acquainted with the terms of the Health Plans, as well as the true methods used to reimburse the Surgery Center's claims, thereby rendering the administrative appeal a futile and meaningless endeavor; and

13

- failed to produce Health Plan documents as required by ERISA despite being requested to do so.

ERISA requires that the Health Plans maintain a benefit determination and claim appeal process that provides a full, meaningful, and independent review, and that affords plan beneficiaries and claimants broad rights to accurate, timely and substantive information regarding the reasons, rules, methodologies, terms, provisions and interpretations that underlie the benefit determinations. The generic responses received from the Health Plans or their agents in response to the Surgery Center's appeals demonstrates that the process was anything but "independent," and that it failed to meet any of these requirements.

## VII.

### Causes of Action

#### Count 1: 29 U.S.C. § 1132(a)(1)(B); Claim for ERISA Plan Benefits

Under 29 U.S.C. § 1132(a)(1)(B), the Surgery Center is entitled to be paid each patient's Health Plan benefits for the services that it rendered to the patient.

The Surgery Center has standing to pursue this claim in two different capacities: (1) as assignee of its patients' benefits and (2) alternatively, as authorized representative of the patients themselves.

### As Assignee of Plan Benefits

As assignee of benefits, the Surgery Center stands in the shoes of each patient, a participant or beneficiary of their respective Health Plan.  Thus, the Surgery Center is entitled to be paid the patient's Health Plan benefits for the medically-necessary services rendered to them. 29 U.S.C. § 1132(a)(1)(B).

### As Authorized Representative of the Patients To Recover Plan Benefits

As authorized representative of each patient, the Surgery Center is entitled to assert the rights of the patient to recover medical expenses they incurred, and for which they are entitled to reimbursement under their Health Plan.  Each patient is a "participant or beneficiary" of their Health Plan entitled to collect benefits and is a "claimant" for purposes of ERISA.  As such, the Surgery Center is authorized to bring this claim against the Health Plans on behalf of their patients. 29 U.S.C. § 1132(a)(1)(B).

## <u>Count 2</u>: 29 U.S.C. § 1132(c)(1); Failure to Provide Information upon Request

ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), provides that "any administrator" who "fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary" shall be, in the court's discretion, liable to the participant or beneficiary in the amount up

to $110 a day from the date of such failure or refusal. *See* 29 CFR § 2575.502c-1 (adjusting penalty from $100 per day to $110 per day). The information that a plan administrator must provide includes the controlling plan documents.

ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) states: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." ERISA § 109(c), 29 U.S.C. § 1029(c) provides that the Secretary of Labor may prescribe what further documents should be furnished. The Secretary of Labor's ERISA claim procedures regulations provide that, in order to provide a full and fair review, the Health Plans must:

> Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section.

29 C.F.R. § 2560.503-1(h)(2)(iii). The Secretary explains at Paragraph (m)(8) what documents are relevant to the claim, and thus are required to be produced under ERISA:

> A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
>
> (i) Was relied upon in making the benefit determination;

16

(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

(iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

(iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(m)(8).

In this case, the Health Plans failed to provide complete plan documents and their reimbursement methodology within 30 days of the Surgery Center's requests to the Health Plans' agents, as each patient's designated authorized representative. Consequently, under ERISA, the Surgery Center is entitled to recover a penalty in the amount of $110 per day per claim from each Health Plan for its failure and refusal to provide all required information upon request.

## VIII.

## Attorneys' Fees

The Surgery Center, both as assignee and as its patients' authorized representative, is entitled to an award of attorneys' fees under ERISA, which allows a court to award "a reasonable attorney fee and costs of action to either party." 29

U.S.C. §1132(g)(1); *see Hardt v. Reliance Std. Life Insurance. Co.,* 130 S.Ct. 2149, 2152 (2010); *see also Baptist Mem. Hosp. - Desoto, Inc. v. Crain Auto., Inc.,* 392 Fed. Appx. 289, 299 (5th Cir. Miss. 2010).

## IX.

## <u>Prayer</u>

The Surgery Center prays for judgment against the Health Plans as set forth above and as follows:

1. For reimbursement in accord with the Health Plan terms;

2. For interest at the applicable legal rate;

3. For reasonable and necessary attorneys' fees; and

4. For such other relief as the Court deems just and proper.

Dated:  August 11, 2021.

Respectfully submitted,

**NICHOLS BRAR WEITZNER & THOMAS LLP**

<u>*/s/ Zachary W. Thomas*</u>
Zachary W. Thomas
Texas Bar No. 2470739
(832) 316-2535
zthomas@nicholsbrar.com
Scott Nichols
Texas Bar No. 14994100
(281) 727-8442
snichols@nicholsbrar.com
2402 Dunlavy Street
Houston, Texas 77006

*And*

**PASHA LAW, P.C.**

<u>*/s/ Nasir Pasha*</u>
Nasir Pasha
Texas Bar No. 24086943
pasha@pashalaw.com
Rustam Abedinzadeh
Texas Bar No. 24087070
abedinzadeh@pashalaw.com
(800) 991-6504
1535 West Loop South, Suite 410
Houston, Texas 77027

*Counsel for Plaintiff Highland Surgical Center LLC*